UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUEL MENDOZA, on behalf of himself, and other similarly situated employees,<br><br>                    Plaintiff,<br><br>          -against-<br><br>THE BOYS' CLUB OF NEW YORK and  YARITZA CORTES,<br><br>                    Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, Manuel Mendoza ("Plaintiff" or "Mr. Mendoza"), on behalf of himself, and others similarly situated, by and through their undersigned attorneys, Valiant Law, hereby complaint about Defendants, The Boys' Club of New York ("TBCNY") and Yaritza Cortes ("Cortes") (all defendants collectively, "Defendants"), and alleges, as follows:

## INTRODUCTION

1.      There are many great non-profit organizations throughout the State and City of New York.  Sadly, however, the Boys' Club of New York operates at the expense of hard-working employees and children who attend their "sleep away" camps, who were forced to eat, sleep and work in squalor (such as a rodent infestation):

 

2.      As such, Plaintiff complained.   Shockingly, supervisor Donnaree Williamson's response regarding the hazardous and unsafe living conditions was "***deal with it.***"

3.      The Boy's Club of New York claims to operate a network of programs for underprivileged children with the purpose of providing enriching, family-friendly experiences to empower boys and young men starting as young as seven years old.

4.      Unfortunately, behind this facade, this "non-profit" placed greed over the safety and welfare of both employees and children alike.[1]

5.      Toward that end, TBCNY permitted appalling, filthy, and hazardous conditions on its premises, including unfinished cabins ripe with mold, a rampant rodent infestation, animal feces and urine, to name a few.

6.      When Mr. Mendoza raised concerns about these issues, TBCNY intentionally ignored his complaints, permitted the hazardous conditions to persist, and worse, forced employees to continue working in the unsanitary environment.   Despite Mr. Mendoza's repeated efforts to escalate the matter, management dismissed his complaints and retaliation ensued.

7.      Ultimately, in a clear effort to silence Mr. Mendoza and sweep these issues under the rug, TBCNY wrongfully terminated his employment.

8.      To add in insult to injury, TBCNY's employees were not compensated for all hours worked and not paid overtime.   Plaintiff was paid for just thirty-five (35) hours of work per week but was forced to do up to sixty (60) hours per week or more without proper compensation.

9.      Simply put, TBCNY has systematically jeopardized the health and safety of employees and the young children it solicits to its facilities.

---

[1]      Upon information and belief, in 2023, TBCNY Executive director, **Stephen Tosh**, reported compensation from the organization in the amount of $271,349.00 plus $36,839.00 in "other" compensation, for a total of **$308,188.00.**   Several other employees of TBCNY reported well over $100,000 in compensation as well.   *See https://projects.propublica.org/nonprofits/organizations/135591750/202421369349314012/full*

10.     Plaintiff, on behalf of himself, and others similarly situated, alleges that pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from the Defendants: (1) unpaid wages and overtime compensation; (2) liquidated damages and statutory penalties pursuant to the New York Wage Theft Prevention Act; (3) pre-judgment and post-judgment interest; and (4) attorneys' fees and costs.

11.     Plaintiff, on behalf of himself, and others similarly situated, further alleges that pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. 201, *et seq.* ("FLSA"), he is entitled to recover from the Defendants: (1) unpaid wages and overtime compensation; (2) liquidated damages; (3) pre-judgment and post-judgment interest; and (4) attorneys' fees and costs.

12.     Plaintiff also complains pursuant to NYLL §§ 215 and 740 for retaliation and the wrongful termination of his employment.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff and Defendants resides within the jurisdiction of this District, and/or Defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced, and because a substantial part of the events and/or omissions giving rise to this action, occurred in this district.

## THE PARTIES

15.     Plaintiff Manuel Mendoza is an adult resident of Westchester County, in the State of New York.  Plaintiff was employed by Defendant as an "Adventure Specialist," from approximately June 2024 through the wrongful termination of his employment on July 26, 2024, and worked at Defendants' Harriman "Basecamp" located at 533 Arden Valley Rd, Southfields, New York, 10975 (the "Basecamp" or "Property").

16.     Upon information and belief, Defendant the Boys' Club of New York, was and is a domestic not-for-profit corporation with its principal place of business located at 287 East 10th Street, New York, New York 10009.

17.     Upon information and belief, TBCNY is an organization which offers a variety of programs, camps and activities with the mission "to empower boys and young men to become competent, confident, character-rich, and connected individuals."  Upon information and belief, TBCNY was the owner, operator, managing agent and/or lessee for Defendant's properties and camps which are the subject of this complaint, including but not limited to, the Property.  Upon information and belief, Defendant is responsible for handling the repairs, maintenance and other work in all the properties, as well the hiring, firing, scheduling, supervising and payment of wages to employees performing such work at the buildings.

18.     Upon information and belief, at all times relevant to the allegations in this Complaint, Defendant has been, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

4

19.     At all relevant times, Defendant, has been and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA and was Plaintiffs' employer within the meaning of the FLSA and the NYLL.

20.     Upon information and belief, Defendant, Yaritza Cortes, is an owner, officer, director, supervisor and/or managing agent of the corporate defendants, whose address is unknown at this time and who participated in the day-to-day operations of TBCNY, and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.A §203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with TBCNY.

21.     Defendants exercised control over the terms and conditions of Plaintiff and other similarly situated employees' employment, in that they have and have had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control work of the employees, including Plaintiff, and (v) otherwise affect the quality of their employees' employment.

22.     Defendant Cortes exercised sufficient control over TBCNY's day-to-day operations as to be considered an employer of Plaintiff under the FLSA and New York Labor Law.

23.     At all times relevant, Plaintiff was and is a covered employee within the meaning of the FLSA and NYLL, and performed by Plaintiff was directly essential to the businesses operated by Defendants.

24.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs lawfully earned overtime wages, in contravention of the FLSA and NYLL.

25.     Defendants knowingly and willfully operated and operates its business with a policy and practice of not paying overtime compensation to Plaintiff and other similarly situated employees.

26.     Defendants knowingly and willfully operated and operates its business with a policy and practice of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and NYLL and supporting federal and New York State Department of Labor Regulations.

27.     Defendants knowingly and willfully operated and operates its business with a policy of not paying Plaintiff, and other similarly situated manual employees weekly, in violation of the NYLL and the supporting New York State Department of Labor Regulations.

## STATEMENT OF FACTS

***Plaintiff Was Forced to Endure Uninhabitable Conditions and Unlawful Pay Practices***

28.     In or about June 2024, was hired by Defendant as an "adventure specialist," "hike guide," and/or camp counselor at its summer camp in New York.  During his tenure, Plaintiff always performed his duties well.

29.     Mr. Mendoza was excited for the opportunity to work with children, some of whom were in need of guidance, support or to simply leave the city for the summer and attend Defendant's sleep away camp.

30.     Ironically, and unknown to Plaintiff at the time, standing up for the safety and well-being of these children and the staff entrusted with their care — a mission the organization claimed as its core purpose — would soon become the reason for the abrupt and unjust end to Plaintiff's employment.

6

31.     Plaintiff's primary responsibilities included organizing and participating in activities with the campers, such as hiking, walking on trails, running on obstacle courses, creating hiking trails, cleaning, outdoor activities, as well as to ensure the safety of the children.

32.     During Plaintiff's employment, more than twenty-five percent of Plaintiffs' job duties involved physical tasks, including, but not limited to, carrying, lifting, hiking, walking constructing hiking trails, using tools, physically moving, moving supplies, boxes and/or other items, walking up and down stairs, hills and conducting numerous outside activities for the campers, and regularly being on his feet.

33.     Plaintiff handled food products, beverages, cleaning products, tools, supplies and other goods and currency which traveled interstate and internationally.

34.     Plaintiff did not supervise other employees and held no role in hiring, firing, promoting, or disciplining any staff.   Plaintiff did not determine rates and methods of pay, timekeeping and payroll, and he did not determine work schedules.   Plaintiff's job duties were non-managerial in nature.

35.     Plaintiff was required to work more than forty (40) hours per week, and his hourly rate of pay was twenty-five dollars ($25.00) per hour.  However, Plaintiff only paid for thirty-five (35) hours per week.   Plaintiff was paid bi-weekly for 70 hours of work at $25.00 per hour, but he always worked in excess of 70 hours per pay period.

36.     Defendants failed to record Plaintiff's actual hours work and report the actual number of hours worked per week on his paystub.

37.     Thus, throughout Plaintiff's employment by Defendants, he was not paid for all hours worked, and often worked over forty (40) hours per week but did not receive overtime compensation in violation of the law.

38.     Plaintiff typically worked Monday through Friday, from approximately 9:00 a.m. to 10:00 p.m. or later, but also worked evenings, weekends, and was on-call consistently as he stayed on the Property.  As such, Plaintiff typically worked approximately 70 hours per week or more.

39.     Plaintiff complained to Defendants, through his supervisors, that he was not being properly compensated given the fact he and others similarly situated were required to work well over 35 hours per week without proper compensation.

40.     During Plaintiff's employment, he was not provided wage statements, and upon information and belief, his wage statements, if any, did not specify the actual number of hours he worked on a weekly basis.

41.     Defendants knowingly and willfully operated the business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to the Plaintiff for work performed over forty (40) hours in a workweek.

### Plaintiff Complained About Wage Violations and Workplace Dangers

42.     Unsanitary, unsafe, and deplorable living conditions plagued the camp, including a rodent mice infestation in the cabins where staff and campers resided.

43.     As such, Plaintiff raised concerns about these conditions to Defendants, such as huge gaps in the cabin's floorboards which posed a danger to residents, as well as the rodents which entered the living areas through such gaps and other areas.    For example, Plaintiff complained to Randolph Gueit, the head of maintenance and facilities, that these disgusting and unsafe conditions posed significant health risks to employees and campers.

44.     Unfortunately, these complaints went unanswered for several weeks, while employees and campers alike were forced to sleep, eat, and breath in cabins littered with rodent

feces, urine and otherwise live with contaminated items, such as clothing and the structures themselves.

45.    On or around July 15th, 2024, Plaintiff escalated his complaints to Defendants' Director of Camp Administration, Donnaree Williamson.

46.    Plaintiff's complaints even included photographs and accounts of other employees' concerns, further confirming the safety issues, such as presence of animal feces, urine and even mold in the cabins, main kitchen, and storage areas.  Williamson dismissed Plaintiff's concerns, stating, "This is the woods;  deal with it."

47.    That same week, Plaintiff also complained to the supervisor, the Defendant's "Chief of Staff," Yaritza Cortez.  Although an exterminator finally arrived to "assess" the issue on or around July 17, 2024, the issue was not remediated during Plaintiff's tenure.

48.    On July 19, 2024, Plaintiff and three other staff members were moved to a different cabin.  However, the new cabin was also infested with rodents, as well as one of the bathtubs filled with garbage and without a shower curtain, rendering it unusable.  A second bathroom in the cabin also contained visible rodent feces and stagnant water on the floor, posing additional health and safety hazards.

49.    Defendants' refusal to remediate the concerns raised by Mr. Mendoza, coupled with their retaliatory relocation of him to a second hazardous cabin (this one filled with garbage), left in a state of powerlessness, fully aware that these conditions were nothing short of inhumane—uninhabitable and dangerous for anyone, let alone vulnerable children.

50.    On July 22, 2024, Plaintiff again escalated his complaints to Yaritza Cortes.  In fact, Plaintiff provided photographs of both cabins through Slack (a messaging app used by staff

of TBCNY to communicate) to both Ms. Cortes and Ms. Williamson.  However, nothing was done, and the messages later were deleted by Defendants from the chat.

51.    During the same week, Plaintiff and his cabinmates were nonsensically instructed to "address the issues themselves."  Shockingly, they were directed to work directly with these hazardous conditions to "sanitize" and "rodent-proof" the cabin.   These employees did not have any experience, training, protective equipment or responsibility to perform such work, which Defendants clearly forced Plaintiff to do in retaliation for his protected activities.  This, like the cabin relocation, further demonstrated Defendants' retaliatory motivations and refusal to address or remedy the legitimate safety concerns.

52.    After several more complaints, the administration claimed to have finally directed Randolph Gueits to address the issues on or around July 25, 2024.

53.    In further retaliation, Plaintiff was told he could not install an "unauthorized" lock on his door, despite the fact that all cabins had latches for locks and other staff members kept their cabins locked, and despite the fact he resided, showered, slept and otherwise lived in this space during the week.

54.    Since the issues were not addressed and Defendants continued to force Plaintiff, other employees and children to live and eat in uninhabitable and hazardous conditions,  Plaintiff continued to complain about what he reasonably believed was unlawful.

55.    In response, and in further retaliation for Plaintiff's protected activities, Defendants wrongfully and pretextually terminated Plaintiff's employment on July 26, 2024, under the guise he was not permitted to put a lock on his bedroom door.

56.    Defendants knowingly and willfully operated the organization and Property with a policy of ignoring employee complaints and failing to address hazardous conditions, including the mice infestation and unsanitary living facilities.

57.    Above are just some of the examples of the harassment, retaliation, abuse and inferior terms and conditions of employment Plaintiff was forced to endure.

58.    Defendants' actions were intended to, and did, create a hostile work environment that no reasonable person would tolerate.

59.    As result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

60.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## COLLECTIVE ACTION ALLEGATIONS

61.    Plaintiffs bring this action individually and as representative on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants, including but not limited to, guides, kitchen workers, counselors, activity specialists, fishing specialists, art specialists, life guards, janitors and "floaters," and others, since April 2022 to the entry of judgment in this case (the "Collective Action Period"), and less than the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members" or "Collective").

62.    The Collective Action Members are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon

which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least dozens of Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

63.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

64.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

65.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

66.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

    a.    Whether the Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

    b.    Whether the Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Collective Action Members;

    c.    What proof of hours worked is sufficient where the employer fails in its duty to maintain wage and hour records;

    d.    Whether the Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    e.    Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

    f.    Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorneys' fees.

67.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

68.    Plaintiffs and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

69.     Plaintiffs sue on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

70.     Plaintiffs bring their New York Labor Law claims on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants, including but not limited to guides, kitchen workers, counselors, activity specialists, fishing specialists, art specialists, life guards, janitors and "floaters," and others, since April 2019 (the "Class Period") and have not been paid for hours worked and/or overtime compensation in violation of the New York Labor Law (the "Class").

71.     The persons in the Class identified herein are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of the Defendants, the Class consists of all camp counselors who have not previously brought independent claims and, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

72.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

73.     Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

74.     Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

75.     Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Class members to represent their interests fairly and adequately, and that they must consider the interests of the Class members just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class members.

76.     Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.  Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and further understand that they may be called upon to testify in depositions and at trial.

77.     Plaintiffs have the same interests in this matter as all other members of the Class and Plaintiffs' claims are typical of the Class.

78.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a. Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York Labor Law;

b. Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiffs and the Class members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. Whether Defendants failed to pay Plaintiffs and the Class members statutory minimum wages, in violation of the New York Labor Law and the regulations promulgated thereunder;

e. Whether Defendants failed to pay the Plaintiffs and the Class members statutory overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the New York Labor Law and the regulations promulgated thereunder;

f. Whether Defendant failed to pay Plaintiffs and the Class members weekly, in violation of the New York Labor Law 191 and the regulations promulgated thereunder;

g. Whether the job duties performed by employees rendered them manual workers under New York Law;

h. Whether the frequency employees were paid was on a bi-weekly basis;

i. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

79.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

80.     Plaintiffs and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

**FIRST CAUSE OF ACTION ON BEHALF OF THE COLLECTIVE**
**FAILURE TO PAY OVERTIME UNDER THE FLSA**

81.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82.     At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

83.     At all relevant times, the Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA.

84.     Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.

85.     Plaintiffs were entitled to be paid hourly at their regular rate of pay, for all hours worked; and at the rate of time and one-half their regular rate of pay, for hours worked in excess of the maximum hours provided for in the FLSA.

86.     At all relevant times, the Defendants had a policy and practice of refusing to pay for all hours worked, and overtime compensation at time and one-half Plaintiffs' regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

87.     Defendants failed to pay Plaintiffs and the Collective Action Members, overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

88.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs the Collective Action Members, for all hours worked, and lawful overtime wages for hours worked in excess of forty (40) per week, when

they knew or should have known such was due and that non-payment of such would financially injure Plaintiffs.

89.    Records concerning the number of hours worked by Plaintiffs and the actual compensation paid to Plaintiffs are in the possession and custody of the Defendants.  Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

90.    As a direct and proximate result of the Defendants' willful disregard of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

91.    Due to the intentional, willful and unlawful acts of the Defendants, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages, and prejudgment interest thereon.

92.    Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION ON BEHALF OF THE CLASS
FAILURE TO PAY COMPENSATION AND OVERTIME UNDER NYLL**

93.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94.    At all relevant times, Plaintiffs, the Collective Action Members, and the Class, were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

95.    Defendants knowingly and willfully violated Plaintiffs', the Collective Action Members', and the Class's rights by failing to pay for all hours worked, and overtime

compensation at rates of not less than one and one-half times their regular rate of pay, for each hour worked in excess of forty (40) hours in a workweek.

96.     Defendants did not provide Plaintiffs with a document or written statement accurately accounting for their actual hours worked on a weekly basis.

97.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain accurate and complete payroll records.

98.     Due to the Defendants' New York Labor Law violations, Plaintiffs and the Collective Action Members, and the Class are entitled to recover from Defendants unpaid overtime wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) et al. and § 198.  Plaintiffs also seek liquidated damages pursuant to New York Labor Law § 663(1).

### THIRD CAUSE OF ACTION ON BEHALF OF THE CLASS
### VIOLATION OF NYLL § 191 – FAILURE TO PAY TIMELY WAGES

99.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

100.    The timely payment of wages provision of New York Labor Law § 191 and its supporting regulations apply to Defendants and protect Plaintiffs from untimely payment of wages.

101.    Defendants are each an employer within the meaning of New York Labor Law §§ 190 and 651.  Defendants routinely failed to pay Plaintiffs timely wages.

102.    Further, Plaintiffs are "manual workers" within the meaning of New York Labor Law § 190(4).

103.    As manual workers, Defendants were required to pay plaintiffs "not later than seven days after the end of the week in which the wages are earned" as required by New York Labor Law § 191(1)(a)(i).

104.    With Defendants paying Plaintiffs every fourteen (14) days, Defendants did not pay Plaintiffs for the first seven (7) days they worked during each pay period within seven (7) days after the end of the week in which the wages were earned.  Plaintiffs did not agree to be paid every fourteen (14) days.

105.    Defendants failed to pay Plaintiffs and the Class on a timely basis as required by New York Labor Law § 191(1)(a).

106.    Plaintiff spent more than twenty-five percent (25%) of his time performing physical tasks and was a "manual worker" within the meaning of the New York Labor Law.

107.    Plaintiff received his paychecks every fourteen days (14) and Defendants failed to pay Plaintiff weekly.

108.    Defendants knowingly and willfully operated the business with a policy of not paying Plaintiff Dixon weekly, despite him being classified as a manual worker under the New York Labor Law.

109.    Due to Defendants' violations of the New York Labor Law, Plaintiff and the Class are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest as provided for by New York Labor Law § 198.

## FOURTH CAUSE OF ACTION ON BEHALF OF THE CLASS
## VIOLATIONS OF THE NEW YORK STATE WAGE THEFT PREVENTION ACT

110.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.  The New York State

Wage Theft Prevention Act requires every employer, including Defendants, to notify its employees, in writing, among other things, of the employee's rate of pay and regular pay day. Defendants were also required to provide Plaintiffs with accurate statements of wages with every payment of wages as required by New York Labor Law § 195(3).

111.   Plaintiffs were not provided with a proper wage notice or accurate wage statements as required by law.

112.   Defendants failed to comply with the notice and record keeping requirements of the New York State Wage Theft Prevention Act and as such are liable for civil penalties, attorneys' fees, and costs.

### FIFTH CAUSE OF ACTION ON BEHALF OF MR. MENDOZA INDIVIDUALLY RETALIATION IN VIOLATION OF NEW YORK LABOR LAW § 740

113.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

114.   New York State Labor Law §740 provides, in relevant part:

An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following:

(a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;…

115.   On occasions too numerous to specify, including in connection with the unethical, unsafe, and hazardous practices and wage violations, Plaintiff reported this unlawful conduct in good faith to Defendants.  Plaintiff repeatedly voiced concerns about a myriad of conditions which Plaintiff reasonably believed were illegal, violative of Defendants' rules and regulations, and potentially hazardous to the employees and campers alike.

21

116.    As such, Plaintiff engaged in protected activities.  Plaintiff reported these issues in good faith because he reasonably believed the conduct, he reported to be unlawful, violative of rules and regulations, and posed a substantial and specific danger to employees and campers.

117.    Plaintiff faced continuous retaliation.  Defendants intentionally and systematically stripped him of his job responsibilities, imposed material changes to his employment conditions, and ultimately terminated him in retaliation for his protected activities, violating New York State Labor Law §740.

118.    Defendants violated the section cited herein by retaliating against Plaintiff for his complaints of Defendants' conduct which Plaintiff reasonably believed violated New York State Laws, Federal Laws, and regulations.

### SIXTH CAUSE OF ACTION ON BEHALF OF MR. MENDOZA INDIVIDUALLY RETALIATION IN VIOLATION OF NEW YORK LABOR LAW §215

119.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

120.    NYLL § 215 (1)(a) provides, in pertinent part:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter… (emphasis added).

121.    The law imposes a non-delegable duty on employers to protect the health and safety of employees and mandates: "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate

protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places." NYLL §200.  The NYLL also provides employees with protections with regard to being paid proper compensation.

122.    As set forth herein, Plaintiff made several complaints relating to retaliation, as well as unsafe and dangerous conditions with respect to his workplace, which Plaintiff reasonably and in good faith believed violated the sections of the NYLL.

123.    The complaints included, but were not limited to, unsafe conditions in Defendants' facility, which Plaintiff reasonably believed to be a violation of NYLL § 200, which imposes a duty on employers to protect, "lives, health and safety of all persons employed." Plaintiff reasonably believed the manner in which Defendants maintained the cabins exposed himself, and customers, to an increased risk of contracting viruses or harmful bacteria and/ or injury.  He complained about the same, thereby engaging in protected activities, and suffered adverse employment actions in retaliation, including inferior terms and conditions of employment, and ultimately, unlawful termination.

124.    Defendants retaliated against Plaintiff due to his protected activities, which culminated in the termination of his employment.

125.    Moreover, Plaintiff objected to Defendants' unlawful wage practices and its failure to compensate him for all hours worked, which Plaintiff reasonably believed he was entitled to receive.  Plaintiff reasonably believed Defendants' refusal to pay him properly to be a violation of the NYLL.  NYLL § 190(1) which defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, or other basis."  NYLL § 193 prohibits an employer from making an unlawful

deduction of wages from an employee.    As detailed herein, Plaintiff complained about Defendants' compensation practices, which constituted protected activity under the law.

126.    Defendants violated the section cited herein by retaliating against Plaintiff for his protected activities and complaints of Defendants' conduct which Plaintiff reasonably believed violated New York State Laws, Federal Laws, and/or regulations.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that this Court grant the following relief:

(a)    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and New York Labor Law;

(b)    Conditionally certify the FLSA Collective and authorize notice of this lawsuit to be sent to all putative Collective Action Members

(c)    An award of unpaid wages and overtime compensation due under the FLSA and New York Labor Law;

(d)    An award of liquidated damages as a result of Defendants' failure to pay wages, and overtime compensation pursuant to 29 U.S.C. § 216;

(e)    An award of liquidated damages as a result of Defendants' failure to pay wages, timely wages, and overtime compensation pursuant to the New York Labor Law;

(f)    An award of front pay, back pay, liquidated, compensatory and punitive damages associated with unlawful retaliatory acts of reducing the employment hours;

(g)    Statutory penalties for Defendants failure to comply with the New York Wage Theft Prevention Act;

(h)    An award of prejudgment and post-judgment interest;

(i)      An award of costs and expenses of this action with reasonable attorneys' fees; and

(j)      Such other and different relief as this Court determines to be just and proper under the circumstances.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated:  White Plains, New York
        May 9, 2025

                        Respectfully submitted,

                        VALIANT LAW

                By:  <u>*s/ Joseph Jeziorkowski*</u>
                        Joseph Jeziorkowski, Esq.
                        *Attorney for Plaintiff*
                        2 Westchester Park Dr, Suite 205
                        White Plains, New York 10604
                        914-730-2422
                        jjj@valiantlaw.com

(i)     An award of costs and expenses of this action with reasonable attorneys' fees; and

(j)     Such other and different relief as this Court determines to be just and proper under the circumstances.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated:  White Plains, New York
   May 6, 2025

         Respectfully submitted,

          VALIANT LAW

       By:  _s/ Joseph Jeziorkowski_
           Joseph Jeziorkowski, Esq.
           *Attorney for Plaintiff*
           2 Westchester Park Dr, Suite 205
           White Plains, New York 10604
           914-730-2422
           jjj@valiantlaw.com